[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
In this action, the plaintiff claims there is a balance due CT Page 6467 it on a construction contract. Most of the facts are not in dispute. The parties did enter into a contract for extensive renovation work to convert the former Russell School to an office building. By a combination of the original contract and a series of change orders, the final price was $799,529, and the plaintiff has been paid most of that amount, but there is a claimed balance due of $7,678. The complaint is in four counts, the first being on the contract, the second in quantum meruit, the third on unjust enrichment, and the fourth being on a promissory note. The defendants have counterclaimed alleging that the work was improperly done in that carpet was either improperly installed or it was installed upon an unsatisfactory underlayment with the result that the carpet separated from the underlayment; that the plaintiff did not deliver to the defendants bills for light fixtures which bills would have permitted them to obtain a rebate from Northeast Utilities; and that the plaintiff failed to seal holes in the foundation where pipes passed through with resultant water leakage into the building.
Laying of the carpet was not the responsibility of the plaintiff, a different entity having been contracted for that work. The only responsibility of the plaintiff was to assure that the underlayment, a concrete floor, was level, and it did do patching in several spots to achieve that result. When the carpet was installed in the third floor corridor, the installation was such that there were bubbles in three areas; plaintiff did do patching to achieve a level surface on a portion of one of those three areas. I find as a fact that the bubbles came about because the carpet people had not properly stretched and rolled the carpet. After the adhesive holding the carpet to the floor had solidified, the carpet people attempted to stretch and smooth the carpet without success. Therefore they pulled up the carpet and portions of the concrete floor came up with it. During the course of the work and before the carpet was laid, the president of the plaintiff had told Ralph Corbo, one of the defendants and a partner in the named defendant, that the concrete flooring was not in good shape and remedial work on it should be included in the contract and Corbo's response was that they were in good enough shape and he refused to have that work added. With this scenario, I do not see how the plaintiff had any responsibility for the unevenness of the carpet or for portions of the concrete floor separating when the glued-on carpet was pulled up.
As to supplying the electrical fixture invoices, this is not provided for in the contract, and I accept as true the testimony of the president of the plaintiff that as a matter of courtesy, he would have responded affirmatively to a request for them if his company had been paid in full, but saw no reason why he should go to the time and trouble of digging them out when there was a balance due. As to the leakage through the foundation, the CT Page 6468 testimony was in conflict but I accept as proven that the leakage is through a preexisting crack and not through the hole that was made to accommodate the pipes installed by the plaintiff.
A certificate of occupancy was issued by the Building Inspector on January 17, 1989 indicating that the work on the third floor, where the carpet problem existed, was substantially complete. A punch list of February 15, 1989, plaintiff's exhibit #11, makes no reference to leakage through the foundation or to a flooring problem. Richard Merrill, another defendant, partner in the named defendant, and architect for the project, participated in the preparation of that punch list.
Sometime in the fall of 1989, there was a falling out between the parties and the defendants did not respond to requests by the plaintiff for payments. The plaintiffs instituted suit and in connection with that, attached the property of the named defendant. As a result, on December 14, 1989, the named defendant gave the plaintiff its promissory note for $15,356, the unpaid balance at that time, payable in monthly installments of $3,839 with interest at 1.5% per month. The note does provide that "Payment shall commence upon release of lien". I accept as proven that the plaintiff did promptly provide a release of lien. Payments were made in January and February, 1990 and it is inconceivable to me that such payments would have been made if the condition had not been met. For reasons unknown, that release was not recorded so a replacement release was furnished and recorded September 27, 1990. The last two payments, total $7,678, plus interest, have not been paid. A request for admissions made by the plaintiff was not answered and therefore is deemed to be admitted. Practice Book 239. It is plaintiff's exhibit #9. Therefore it is admitted that the note of December 14, 1989 was executed by the named defendant; that it was for the sum of $15,346; that it provided for interest at the rate of 1.5% a month; that only two payments of $3,839 were made; that there is a balance due of $7,678; and that "Russell Associates is obligated to pay to Montagno Construction, Inc. $7,678.00 plus interest".
Judgment may enter for the plaintiff for $7,678 plus interest at 1.5% per month on unpaid balances between December 14, 1989 and the date judgment is entered. Judgment may also enter for the plaintiff on the counterclaim. The interest is to be computed and costs are to be taxed.
J. HEALEY